**IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Camiella Williams | ) | Case No. |
| | ) | |
| v. | ) | Judge _____ |
| | ) | |
| Village Of Dolton, Dolton Mayor | ) | |
| Tiffany Henyard, Dolton Police | ) | |
| Officer Lacey, Dolton Police | ) | |
| Officer Jane Doe 1 | ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |

**<u>COMPLAINT</u>**

1.      On July 27, 2021, Dolton Police Department (DPD) officers shot and killed Alexis Wilson, a 19-year-old Black woman who studying to become a therapist for people with autism. After confronting Wilson violently, DPD officers opened fire at Wilson, shooting her seven times, twice in the head.

2.      The fatal police shooting of Alexis Wilson occurred just over a year after the police murder of George Floyd mobilized people around the world to condemn police violence and anti-Black racism. Despite an unprecedented global pandemic, millions of people participated in demonstrations to raise awareness of and demand justice for victims of police brutality. During the summer of 2020, in cities throughout the United States, police officers responded to those protests with widespread violence and deprivation of protesters' First Amendment Rights.[1]

---

[1] Kim Barker, et al., *In City After City, Police Mishandled Black Lives Matter Protests*, N.Y. Times, (Jun 28, 2021), https://www.nytimes.com/2021/03/20/us/protests-policing-george-floyd.html.

3.      Plaintiff Camiella Williams is a co-founder of Good Kids Mad City, a member of the board of trustees at Prairie State University, and a longtime organizer and activist in the Chicago land area.

4.       In the immediate aftermath of Wilson's death, GKMC and Plaintiff Williams supported the Dolton community with protest planning support and other forms of advocacy and organizing. When racial justice and anti-police violence protests arrived in Dolton in response to Wilson's death, DPD responded with aggressive and unlawful police tactics. On September 1, 2021, Plaintiff Williams and other community members gathered near Dolton Village Hall to protest DPD's actions and demand justice for Alexis Wilson. During these peaceful protests, DPD officers harassed Plaintiff Williams and falsely arrested her and other demonstrators for allegedly interfering with a public meeting. These constitutional violations resulted directly from the policies and practices of the Village of Dolton and the DPD (or lack thereof), and the directives of the Mayor of Dolton which remain in place to this day.

5.      This lawsuit seeks to enforce the Plaintiffs' rights under the First and Fourth Amendments of the United States Constitution, pursuant to 42 U.S.C. § 1983. Plaintiff Williams seeks monetary damages for the harm she endured because of the Defendants' unlawful actions.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a).

7.      Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims asserted in this Complaint occurred in this judicial district.

## PARTIES

8.      Plaintiff CAMIELLA WILLIAMS is a Black woman, an activist, and one of the founders of GKMC. She is also an elected official for the Prairie State Community College

District 515 Board of Trustees. For the past seventeen years, Plaintiff Williams has dedicated her life to anti-violence and police accountability work in the Chicagoland area. She has challenged several suburban municipalities on police shootings, seeking to hold those jurisdiction's police forces accountable when excessive use of force has led to a death by the police.

9.      Defendant VILLAGE OF DOLTON (hereinafter "the Village") is and at all times mentioned herein a municipality organized and operating under the statutes of the State of Illinois.  The Village is authorized under the statutes of the State of Illinois to maintain the DPD, which acts as the Village's agent in the areas of municipal law enforcement and for which the Village is ultimately responsible. Defendant Village was, at all times material to this Complaint, the employer and principal of Defendant Officers.

10.     Defendant TIFFANY HENYARD  is the mayor of the Village. At all relevant times to the events at issue in this case, Defendant Henyard was employed by the Village. As such, she acted under color of law and within the scope of her employment with the Village. She is sued in her official and individual capacities.

11.     Defendant OFFICER LACEY and OFFICER JANE DOE 1 are employees of the DPD. At all times relevant to the events at issue in this case, Defendant officers acted under color of law and within the scope of their employment with the DPD.  Each is sued in his or her individual capacity for violating Plaintiff's rights guaranteed by the U.S. Constitution and Illinois state law.

## FACTUAL ALLEGATIONS

**THE MAYOR OF DOLTON ENGAGED IN RETALIATORY CONDUCT WHEN PLAINTIFFS EXERCISED THEIR FIRST AMENDMENT RIGHTS IN RESPONSE TO THE POLICE SHOOTING OF ALEXIS WILSON**

12.     On July 27, 2021, DPD officers fatally shot Alexis Wilson, a 19-year-old Black woman, seven times at the drive-thru of Baba's Famous Steak & Lemonade Restaurant. Community members, including Plaintiff Williams and GKMC members, held several peaceful protests during the weeks following the police shooting of Alexis Wilson. They asked the Village to hold the officers responsible for Wilson's death accountable for their actions.

13.     On August 2, 2021, Plaintiff Williams organized and participated in a protest demanding justice for Alexis Wilson outside of Defendant Mayor Henyard's house. During the protest, Dolton Police, Illinois State Police, and police from Hazel Crest, Posen, Harvey, and Country Club Hills were present.

14.     After the protest, Defendant Mayor Henyard repeatedly expressed to several people that she was upset at Plaintiff Williams for organizing the protest. A confidante of the Mayor relayed Defendant Mayor Henyard's comments to Plaintiff Williams.

15.     On August 12, 2021, Plaintiff Williams and Alexis Wilson's father went to the Village board meeting to express frustration with Village Official's response to Wilson's death. Defendant Mayor Henyard locked Dolton's trustees out of the board meeting thereby preventing the board from reaching the quorum necessary to proceed with the meeting. As a result, Plaintiff Williams and other activists could not make any statements on record to board members regarding justice for Alexis Wilson. Upon information and belief, Mayor Henyard took this action to chill criticism of the DPD and her administration.

16.     Subsequent board meetings were conducted via zoom due to COVID-19. During these meetings, upon information and belief, Mayor Henyard directed her staff members to disable the chat feature and to block community members from making public comments. Defendant Henyard took these actions to further chill criticism of the DPD and her

administration. From August to November 2021, Defendant Henyard repeatedly directed her staff to take several actions aimed at limiting or eliminating speech related to Wilson's death. These actions included denying people the right to speak during public meetings, disabling the chat feature on zoom, and eventually implementing a policy requiring people to register to speak so that certain speakers could be excluded. As a result, during several meetings that Plaintiff Williams attended, she could not ask about the Village's intention to hold DPD officers accountable for Alexis Wilson's death. Plaintiff Williams last attempted to access these meetings in December 2021.

### MAYOR HENYARD DIRECTS DPD TO VIOLATE THE CONSTITUTION AND VIOLATE PLAINTIFFS RIGHT TO PROTEST

17.     Plaintiff Williams and other GKMC members organized a demonstration seeking justice for Alexis Wilson near Dolton Village Hall.

18.     On September 1st, 2021around 5:00 P.M., activists and community members gathered on the sidewalks near Dolton Village Hall on Chicago Rd. near 142nd street in Dolton. At the same time, Defendant Mayor Henyard held an outdoor, homeowners meeting at Dolton Village Hall. Plaintiff Williams hoped the protest would raise awareness of Alexis Wilson's tragic death to other residents of the Village so they may be moved to also seek accountability for the officers responsible.

19.     Plaintiff Williams and twenty-five other activists gathered near Village Hall, intending to approach and participate in the Mayor's public meeting and to peacefully demand justice for Alexis Wilson.

20.     Nearly 125 police officers arrived at the location of the peaceful protest, including Dolton police and the Illinois State Police. Officers wore tactical gear, and some carried batons and/or tear gas.

21.     At or around 5:30 PM, police officers refused to allow the peaceful protestors to approach the Mayor's meeting, and ordered them to move back away from the meeting. The protestors peacefully complied with these orders.

22.     Over the next thirty minutes, protestors continued to peacefully exercise their First Amendment rights on the public sidewalk near the Mayor's meeting. They chanted Alexis Wilson's name and held signs that read "Justice for Alexis Wilson." Police officers became increasingly aggressive as they continued to order protestors to move further away from the public meeting to which protestors were entitled to attend. Officers ordered protestors to move further away from the Mayor's meeting approximately every ten minutes, and at least 3 additional times.

23.     After the police ordered the protestors further away from the meeting, Defendant Officer Lacey shouted into the crowd in a threatening tone, "Who is the organizer of this protest?" Plaintiff Williams did not volunteer to help organize the protest; she feared that DPD officers would arrest her if they viewed her as the main organizer. When Defendant Lacey did not receive an answer to his question, he continued to shout threats, including, "Alright, y'all are going to get locked up."

24.     Defendant Officer Lacey began to block off the streets with police tape. Other DPD officers blocked the protestors' path to Village Hall using yellow crime scene tape and firetrucks.

25.     About forty-five minutes after Defendant Officer Lacey and other officers blocked their intended path and pushed protestors further from the Mayor's meeting, protestors tried to approach the Mayor's meeting by walking outside of the area blocked by the police. The

protestors walked peacefully, holding up their signs. Only Plaintiff Williams carried a bullhorn, which she used to continue leading the crowd in chanting "Alexis Wilson".

26.     As protestors attempted to join the Mayor's public meeting, they met additional police officers. Defendant Officer Lacey told protestors to "move back." Officers then walked in a coordinated line toward the protestors, threatening them with violence, arrest, and taunting them.

27.     As protestors slowly backed up, Defendant Officer Lacey pushed through the crowd toward Plaintiff Williams. Plaintiff Williams continued to lead the crowd in chanting "Alexis Wilson," and she never stated that she was one of the leaders of the protest. Defendant Officer Lacey told her to put her hands behind her back. Plaintiff Williams, still holding her bullhorn, asked Defendant Officer Lacey why she was being arrested. Defendant Officer Lacey did not respond to the question and continued to seize Plaintiff Williams and stated to her, "don't resist."

28.     While handcuffed, Plaintiff Williams asked Defendant Officer Lacey why he was arresting her. Officer Lacey responded, "I'm shocked at you, you know better. You going to court. You have some charges coming your way."

29.     Defendant Jane Doe 1, a second, unidentified female officer stated that she was ordered to make the arrest of Plaintiff Williams. Plaintiff Williams asked if the order came from Defendant Mayor Henyard. The officer replied "yes." When Plaintiff Williams again asked why, the unidentified officer replied, "I just do my job."

30.     Mayor Henyard directed a Defendant DPD officer Jane Doe 1 to arrest Plaintiff Williams while she exercised her constitutionally protected First Amendment rights.

31.    Before Office Lacey arrested Plaintiff Williams, another officer first arrested a protester on the scene that was filming the protest. After Officer Lacey arrested Plaintiff Williams, another protestor began to use the bullhorn that Plaintiff William's left behind. The protestor exercised his First Amendment rights and peacefully criticized the officers on the scene for their conduct towards the protestors. The protestor did not threaten violence, nor did he incite others to act in a violent way. Officers quickly arrested the protestor with the bullhorn.

32.    DPD officers attempted to arrest a few other protestors, but the protesters quickly disbanded and retreated from the protest. At all times, protestors were peaceful and on public property.

33.    Because of the arrests, protestors never arrived at the Mayor's meeting at Village Hall. At no point did they participate in the Mayor's public meeting.

34.    Defendant DPD officer Lacey and Jane Doe 1 kept Plaintiff Williams in handcuffs for forty-five minutes and eventually released her.

35.    Plaintiff Williams did not commit any unlawful act. Plaintiff Williams engaged in constitutionally protected activity in a public forum when she was arrested. Plaintiff Williams did not physically attack, assault, threaten, or resist Defendant Officers or any other police officers at any time or in any way.

36.    Plaintiff Williams later discovered that the charges against her had been dropped.

37.    In addition to Plaintiff Williams during this same protest, DPD unlawfully arrested four other protest leaders.

**MAYOR HENYARD INTRODUCED A POLICY INTENDED TO SEVERALY RESTRICT THE FIRST AMENDMENT RIGHTS OF PLAINTIFFS AND OTHERS SEEKING TO ENGAGE IN FIRST AMENDMENT ACTIVITY IN DOLTON**

38.     On September 7th, 2021, Defendant Mayor Henyard introduced an ordinance that would restrict Plaintiffs' constitutionally protected right to protest in Dolton. The ordinance requires any person or organization to notify the Police Chief at least five days before an assembly, which the Police Chief retains the right to forbid. In the event of a spontaneous or urgent protest, the Police Chief's decision is final, thereby giving DPD complete discretion over whether to permit assembly.

39.     Based on Defendant Mayor Henyard's response to ongoing protests regarding Alexis Wilson, Plaintiffs understands that the ordinance is meant to prevent them from protesting in Dolton. Defendant Mayor Henyard's actions intimidated Plaintiff Williams and other GKMC members, and Plaintiff Williams felt they could no longer exercise their First Amendment rights safely in Dolton as the Mayor seeks to make the approval of their upcoming protests discretionary decisions by the DPD.

40.     On October 14, 2021, Plaintiff Williams met with Defendant Mayor Henyard to discuss the protests and how the Mayor can respond to the community demands for Justice for Alexis Wilson. During the meeting, Defendant Mayor Henyard told Plaintiff Williams that she was angry at her for organizing a protest outside her home.

41.     Defendant Mayor Henyard, based on her feelings of animus toward Plaintiff Williams and other protestors, willfully directed DPD officers to restrict Plaintiff Williams' ability to protest in pursuit of justice for Alexis Wilson.

42.     Defendant Mayor Henyard also limited Plaintiff Williams' ability to participate in public meetings by preventing quorum at the trustees' meeting on August 12, 2021, and changing the policy for public participation in council meetings.

43. Mayor Henyard attempted to enact retaliatory and inappropriate policies that are chilling and defeating the right to protest because of her animus toward GKMC and Plaintiff Williams' protesting efforts. Given Mayor Henyard and DPD's continued disruption of Plaintiff Williams' efforts to seek justice for Alexis Wilson, Plaintiff Williams fears continuing her lawful activities.

**THE POLICY AND PRACTICE FAILURES OF THE VILLAGE OF DOLTON AND THE DOLTON POLICE DEPARTMENT LED TO THE VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS**

**THE VILLAGE OF DOLTON HAS BEEN ON NOTICE THAT DPD HAS CONSTITUTIONALLY DEFICIENT POLICIES, PRACTICES, AND PROCEDURES RELATING TO INTERACTING WITH PROTESTORS**

44. All reasonable law enforcement agencies are aware that a constitutional right to protest exists in the United States. That DPD lacks policy to address the existence of this constitutionally protected right is a grave deficiency. The lack of policy also demonstrates a practice of DPD officers utilizing complete personal discretion, rather than adhering to a DPD policy, when policing individuals engaging in First Amendment activity.

45. DPD's lack of policy regarding the use of aggressive tactics that unnecessarily escalate encounters with individual leads to increased tensions, and the frequent use of excessive force.

46. The long-standing practice and custom of Dolton police officers engaging in unlawful arrests are the direct and proximate cause of the constitutional violations outlined in this Complaint.

47. Upon information and belief, DPD fails to provide officers training on constitutional arrest procedures. This has and continues to lead to excessive unconstitutional stops, arrests, and uses of force.

a. On September 1, 2021, **Shabbir Manjee** was subject to attack from Dolton police officers who disrupted his free speech activity, roughly seized, and arrested him, held him for several hours, and issued him a false ticket alleging that Plaintiff was interfering with a public meeting.

b. On January 27, 2019, a Dolton police office waiting for food at the same location as **Bobby Richardson** used provocative language specifically to intimidate Richardson, and after doing so called for backup to unlawfully arrest him.[2]

c. On September 5, 2018, Dolton police officer Lacey threatened to tase **Martese Fleming** if he did not exit his vehicle. Officer Lacey never stated a cause for arrest, yet punched Fleming in the stomach, tased him, and searched his vehicle.[3]

d. On August 4, 2017, **Elijah Norman** was unlawfully arrested when he sat in a parked car with his girlfriend in a park in Dolton. Norman was visiting family members that work in the park, which Dolton police officers knew. Officers ordered Norman out of the car with the threat of tasing and arrested him without cause.[4]

e. On January 4, 2018, **Joshua Tellis** was stopped by the Dolton police with his minor nephew in the car. Without cause, officers searched the vehicle and found no illegal substances or weapons. Officers ordered the minor out of the car and arrested him following the search of the vehicle. Officers also proceeded to use unreasonable force against Tellis, including but not limited to smashing his head into the window of a vehicle. No charges were filed against Tellis or any others in the vehicle.[5]

f. On March 14, 2017, Dolton police stopped **Lawanda Norwood**'s vehicle without cause and with weapons drawn. As Norwood sat in the vehicle sick and vomiting, officers pulled passenger Aramis Somerville out of the vehicle and slammed him to the ground. After some time and with no charges pressed, officers released Norwood and Somerville, telling them to "just go."[6]

g. On July 11, 2013, **Jerome White** was standing in front of his home when Dolton police office Lacey arrested him. Office Lacey used excessive and unreasonable force and cited an ordinance violation as the cause for arrest once he brought White to the police station.[7]

---

[2] *Richardson v. Village of Dolton et al*, Docket No. 1:20-cv-04254 (N.D. Ill. Jul 20, 2020)
[3] *Fleming et al v. City of Dolton et al*, Docket No. 1:19-cv-07898 (N.D. Ill. Dec 02, 2019)
[4] *Norman vs. Gilhooly, et al.*, Docket No. 1:18-cv-05151 (N.D. Ill. Jul 27, 2018)
[5] *Tellis et al v. Village of Dolton et al*, Docket No. 1:18-cv-01507 (N.D. Ill. Feb 28, 2018)
[6] *Norwood et al v. Village of Dolton et al*, Docket No. 1:17-cv-06494 (N.D. Ill. Sep 08, 2017)
[7] *White v. Village of Dolton et al*, Docket No. 1:13-cv-07914 (N.D. Ill. Nov 04, 2013)

48.     Upon information and belief, the DPD does not have nor implements any policies to address how officers are to engage with individuals participating in constitutionally protected First Amendment activity. Upon information and belief, the DPD has not implemented any policy to guide officers on the appropriate way to engage with individuals participating in constitutionally protected First Amendment activity since the unlawful arrest of Plaintiff Williams. The conduct of the DPD on September 1, 2021, towards the peaceful protestors creates a chilling effect for community members and activists in Dolton seeking to exercise their rights, but who fear retaliation and unlawful conduct from officers.

49.     Upon information and belief, the DPD does not have any policies instructing officers how to proceed when directed to violate the constitution. The lack of policy on this matter means there is nothing to guide officers in appropriate, professional responses to a retaliatory directive.

50.     Upon information and belief, there is no policy that standardizes the accountability process for DPD officers when they opt to follow and enforcing retaliatory directives.

**DUE TO DPD POLICY DIFICIENCIES AND RETALIATORY CONDUCT BY THE DPD AND MAYOR HENYARD, PLAINTIFF REASONABLY FEARS THAT SHE WILL NOT BE ABLE TO WORK AS AN ACTIVIST**

51.     Plaintiff Williams fears that she can no longer safely work as an activist as Defendants will intimidate, falsely arrest her without probable cause, and stop her from exercising her constitutional rights of speech and assembly. Consequently, Plaintiff Williams no longer feels safe protesting, a devastating consequence for her as she has been an activist and organizer in her community for nearly twenty years.

52.     Dolton Police humiliated Plaintiff Williams because there are publicly available pictures of the arrest on the internet. Plaintiff Williams experiences increased fear and discomfort in the presence of police officers. Plaintiff Williams also fears retaliation from police for her role as an organizer and protestor in Dolton and other suburban municipalities that cooperate with the DPD.

**DUE TO DPD POLICY DIFICIENCIES AND RETALIATORY CONDUCT BY THE DPD AND MAYOR HENYARD, PLAINTIFF WILLIAMS REASONABLY FEARS THAT SHE WILL NOT BE ABLE TO WORK AS A COMMUNITY ORGANIZER THAT ADVOCATES AGAINST POLICE VIOLENCE IN DOLTON**

53.     As a result of the actions of Defendants, Plaintiff Williams feels she cannot safely organize peaceful protests. Plaintiff Williams fears that Defendants will continue to violate her constitutional rights, and the rights of other GKMC members and community participants, including but not limited to violating their First Amendment rights.

54.     Plaintiff Williams also fears that the Village of Dolton will falsely detain or arrest her and other community participants during a peaceful protest without probable cause. Defendants' actions have caused a chilling effect in Plaintiff's ability to organize further protests, resulting in Plaintiff Williams diverting precious time and resources away from organizing in the community.

55.     As a direct and proximate result of Defendants' actions as detailed above, Plaintiff Williams suffered and continues to suffer, *inter alia*, fear, humiliation, pain and suffering, extreme mental distress, and anguish. Given the history of intimidation, detention, and false arrests by Defendants against peaceful protestors, Plaintiffs feel terrified of any future protests and community activism they have planned and want to participate in.

56.     As a direct and proximate result of the actions of Defendants as detailed above, Plaintiff Williams has suffered and continues to suffer, inter alia, intimidation and fear in

furthering her work's purpose of organizing community members to end over-policing and gun violence in the Village of Dolton.

## LEGAL CLAIMS

### COUNT I – 42 U.S.C. § 1983
### Violation of the First Amendment – Freedom of Speech and Assembly, Intimidation and Retaliatory Use of Force
### (Plaintiff Williams against Defendant Officers Lacey and Jane Doe 1 for Damages)

57.     Plaintiff repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

58.     Count I is alleged against Defendant Officers Lacey and Jane Doe 1.

59.     As described in detail above, Plaintiff Williams engaged in lawful, constitutionally protected protest activity on the public streets of the Village of Dolton.

60.     The actions of Defendant Officers described above violated Plaintiff Williams' rights to freedom of speech and assembly as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

61.     Defendant Officers retaliated against Plaintiff Williams for engaging in protected speech by subjecting her to false arrest without legal justification. Plaintiff Williams' protected speech was the substantial and motivating factor for Defendant Officers to detain her. Defendant Officers intended to make Plaintiff Williams and other protestors wary of continuing to engage in protected speech and assembly activities in the future, and specifically to chill their rights as guaranteed under the First Amendment.

62.     At all relevant times, Defendant Officers knew that Plaintiff Williams was engaged in constitutionally protected speech and assembly when they violated her rights.  The misconduct described in this Count was objectively unreasonable and was undertaken

intentionally, with malice and knowing disregard for Plaintiff Williams' clearly established constitutional rights.

63. The actions of Defendant Officers were the direct and proximate cause of the violations of Plaintiff Williams's constitutional rights, pain, suffering, mental distress, anguish, humiliation, and loss of personal freedom, as set forth more fully above.

**COUNT II – 42 U.S.C. § 1983**
**Violation of the Fourth Amendment – False Arrest**
**(Plaintiff Williams against Defendant Officers Lacey and Jane Doe 1 for Damages)**

64. Plaintiff repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

65. Count II is alleged against Defendant Officers Lacey and Defendant Officer Jane Doe 1.

66. Defendant Officers' false detention and arrest of Plaintiff Williams without reasonable suspicion or probable cause violated her Fourth and Fourteenth Amendment rights to be free from unreasonable search and seizure.

67. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiff's clearly established constitutional rights.

68. The actions of Defendant Officers Lacey and Jane Doe 1 were the direct and proximate cause of the violations of Plaintiff's constitutional rights, pain, suffering, mental distress, anguish, humiliation, loss of personal freedom, and legal expenses, as set forth more fully above.

**COUNT III – 42 U.S.C. § 1983**
**Conspiracy to Deprive Plaintiff of Her Constitutional Rights**
**(Plaintiff Williams against Defendants Officers Lacey, Jane Doe 1, and Mayor Henyard for Damages)**

69.     Plaintiff repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

70.     Count III is alleged against Defendant Officer Lacey, Defendant Officer Jane Doe 1, and Defendant Mayor Henyard.

71.     Defendant Officer Lacey, Defendant Officer Jane Doe 1, and Defendant Mayor Henyard, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

72.     Each of the Defendants took concrete steps to enter into an agreement to unlawfully detain and arrest Plaintiff Williams despite knowing that they lacked reasonable suspicion and probable cause to do so. In doing so, Defendant Officers acted for the purpose of violating Plaintiff Williams's First, Fourth, and Fourteenth Amendment rights.

73.     In furtherance of this conspiracy, each of the Defendant Officers committed specific overt acts, misusing their police powers for the purpose of violating the rights of Plaintiff Williams and the other protestors. They accomplished this goal in part by unlawfully arresting Plaintiff Williams.

74.     Each individual Defendant Officer is therefore liable for the violation of Plaintiff Williams' rights by any other individual Defendant Officer.

75.     As a direct and proximate result of this conspiracy, Plaintiff Williams suffered damages, including pain, suffering, mental distress, anguish, humiliation, and loss of personal freedom, as set forth more fully above.

**COUNT IV – Illinois State Law Claim**
**Violations of the Illinois Constitution**
**(Plaintiff Williams against Defendant Officers Lacey and Jane Doe 1 for Damages)**

76.     Plaintiff repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

77.     Count IV is alleged against Defendant Officers Lacey and Jane Doe 1.

78.     The actions taken by Defendant Officer Lacey and Jane Doe 1 denied Plaintiff Williams her state constitutional rights to free expression and assembly in a peaceable manner and to be free from an unreasonable seizure as provided by the Illinois Constitution, Article I, sections 1, 2, 4, 5, and 6.

79.     The actions of Defendant Officers were the direct and proximate cause of the violations of Plaintiff Williams' Illinois State Constitutional Rights.

80.     Defendant Officers' actions were a direct and proximate cause of Plaintiff Williams' injuries as set forth above.

**COUNT V – State Law Claim**
**False Arrest**
**(Plaintiff Williams against Defendant Officers Lacey and Jane Doe 1 for Damages)**

81.     Plaintiff repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

82.     Count V is alleged against Defendant Officers Lacey and Jane Doe 1.

83.     As described in detail above, Defendant Officers falsely detained and arrested Plaintiff Williams without reasonable suspicion or probable cause that she had committed an offense.

84.     The misconduct in this Count was undertaken intentionally, with malice, willfulness, and reckless indifference to Plaintiff Williams' rights.

85.     The actions of Defendant Officers were the direct and proximate cause of the violations of Plaintiff Williams's rights, pain, suffering, mental distress, anguish, humiliation, and loss of personal freedom, as set forth more fully above.

## COUNT VI – Illinois State Law Claim
## Conspiracy
**(Plaintiff Williams against Defendants Officers Lacey and Jane Doe 1, and Defendant Mayor Henyard for Damages)**

86.     Plaintiff repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

87.     Count VII is alleged against all Defendant Officers and Defendant Mayor Henyard.

88.     Defendant Officers together reached an understanding, engaged in, and continue to engage in a course of conduct, and otherwise jointly acted and conspired among and between themselves to violate Plaintiff Williams' rights as guaranteed by the Illinois constitution and to be free from false arrest.

89.     In furtherance of this conspiracy or conspiracies, Defendant Officers, together with their co-conspirators, committed the overt acts set forth above.

90.     Defendant Officers acted with malice, willfulness, and reckless indifference to Plaintiff's rights.

91.     Each individual Defendant is therefore liable for the violation of Plaintiff Williams' rights by any other individual Defendant.

92.     The conspiracy or conspiracies were and are continuing in nature.

93.     As a direct and proximate result of Defendant Officers' conspiracy, Plaintiff Williams suffered damages, including mental distress, anguish, humiliation, and violations of her rights, as set forth more fully above.

**COUNT VII – State Law Claim**
**Respondeat Superior**
**(Plaintiff Williams against Defendant Village of Dolton for Damages)**

94.     Plaintiff repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

95.     Count VIII is alleged against Defendant Village of Dolton.

96.     In committing the acts alleged in this Complaint, multiple Defendant Officers were members of, and agents of, the DPD, acting at all relevant times within the scope of their employment.

97.     Defendant Village of Dolton is liable as principal for all torts in violation of state law committed by its agents.

**COUNT VIII – State Law Claim**
**Indemnification**
**(Plaintiff Williams against Defendant Village of Dolton for Damages)**

98.     Plaintiff repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

99.     Count VIII is alleged against Defendant Village of Dolton.

100.     In Illinois, pursuant to 735 ILCS 10/9-102, public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

101.    Defendant Officers acted within the scope of their employment in committing the misconduct described herein.  Therefore, Defendant Village of Dolton is liable as their employer for any resulting damages or award of attorney's fees.

### COUNT IX – 42 U.S.C. § 1983—*Monell* Liability
### (Plaintiff Williams Against the Village of Dolton and Mayor Henyard for Damages)

102.    The allegations set forth above are realleged and incorporated by reference as if fully set forth herein.

103.    Count IX is alleged against the Village of Dolton and Mayor Henyard.

104.    The Village of Dolton through its Police Department and Mayor, has interrelated de facto policies, practices, and customs which included, inter alia:

> a.  Falsely arresting protesters for engaging in protected speech and assembly,

> b.  Using excessive force, and falsely arresting individuals without legal justification,

> c.  Failing to train officers on how to appropriately respond to protesters engaging in their constitutionally protected rights,

> d.  Failing to promulgate policies to address how officers are to engage with individuals participating in constitutionally protected First Amendment activity,

> e.  Retaliating against protesters who speak out against the Dolton police and/or Mayor Henyard,

105.    Defendant Officers acted under the color of the law, and under the authority of one or more interrelated de facto policies, practices, and/or customs of the Village of Dolton, by and through Mayor Henyard, to violate Plaintiff Williams' rights as set forth above.

106.    Defendant Mayor Henyard, in her role as the mayor of the Village of Dolton, was the final policymaker for DPD's response to the protests.

107.    Defendant Mayor Henyard developed and maintained policies, practices, procedures, and customs of Dolton Police officers falsely arresting protesters, exhibiting deliberate indifference to the constitutional rights of Plaintiffs, including but not limited to those policies, practices, procedures, and customs described above, which caused the violation of Plaintiffs' rights as described herein and the resultant damages suffered.

108.    Defendant Mayor Henyard  had the power to prevent or aid in the prevention of the wrongs done and conspired to be done as described herein, yet failed or refused to do so, in violation of 42 U.S.C. § 1983.

109.    Upon information and belief, Defendant Mayor Henyard was deliberately indifferent to the need for further training, supervision, or discipline related to arrests of protesters.

110.    The policies, practices, procedures, and customs of the DPD were the direct and proximate cause of the violations of Plaintiff's constitutional rights and the damages they suffered.

**COUNT X – 42 U.S.C. § 1983—Unlawful Policy & Practice**
**(Against Mayor Henyard for Damages for Violations of the First Amendment)**

111.    Plaintiff repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

112.    Count X is alleged against Defendant Mayor Henyard in her official capacity.

113.    Defendant Mayor Henyard acted under the color of law to violate Plaintiffs' rights as set for in the preceding claims.

114.     Specifically, Mayor Henyard used her authority as Mayor of Dolton to instruct the Dolton Police to target the Plaintiff with enforcement action and took further actions to chill Plaintiff's speech criticizing the village of Dolton, its police Department and the Mayor herself.

115.     Mayor Henyard's actions taken in violation of the First Amendment were the direct and proximate cause of the violations of Plaintiff's constitutional rights and the damages she suffered.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs Williams pray for a judgment and following relief:

116.     Award Plaintiffs compensatory and punitive damages.

117.     Award Plaintiffs reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988.

118.     Award Plaintiffs such other and further relief as this Court may deem appropriate and just.

## JURY DEMAND

Plaintiffs demand trial by jury.


Dated: August 18, 2023

                                        Respectfully submitted,

                                        /s/ Sheila A. Bedi
                                        Sheila Bedi
                                        Community Justice and Civil Rights Clinic
                                        Northwestern Pritzker School of Law
                                        375 E. Chicago Ave., 8th Floor
                                        Chicago, IL 60611
                                        Phone: 312-503-2492
                                        sheila.bedi@law.northwestern.edu

/s/ Kara Crutcher
Kara Crutcher
Community Justice and Civil Rights Clinic
Northwestern Pritzker School of Law
375 E. Chicago Ave., 8th Floor
Chicago, IL 60611
Phone: 773-575-9010
Kara.crutcher@law.northwestern.edu