IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CAMIELLA WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23-CV-5670 |
| | ) | |
| v. | ) | Judge Robert W. Gettleman |
| | ) | |
| VILLAGE OF DOLTON, DOLTON MAYOR TIFFANY HENYARD, DOLTON POLICE OFFICER LACEY, DOLTON POLICE OFFICER JANE DOE 1, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Camiella Williams brings the instant ten-count complaint against: the Village of Dolton ("the Village"); Tiffany Henyard ("Mayor Henyard" or "Henyard"), the mayor of Dolton; and Dolton Police Officers Lacey ("Officer Lacey" or "Lacey") and Jane Doe 1 (collectively, "defendants"). Count I alleges that Officers Lacey and Jane Doe 1 violated the First Amendment of the U.S. Constitution, pursuant to 42 U.S.C. § 1983; Count II alleges that Officers Lacey and Jane Doe 1 violated the Fourth Amendment to the U.S. Constitution, pursuant to 42 U.S.C. § 1983; Count III alleges that Mayor Henyard and Officers Lacey and Jane Doe 1 conspired to deprive plaintiff of her constitutional rights, pursuant to 42 U.S.C. § 1983; Count IV alleges that Officers Lacey and Jane Doe 1 violated the Illinois Constitution, Article I, §§ 1, 2, 4, 5, and 6; Count V alleges that Officers Lacey and Jane Doe 1 falsely arrested plaintiff under state law; Count VI alleges that Mayor Henyard and Officers Lacey and Jane Doe 1 conspired to deprive plaintiff of her rights under the Illinois constitution; Count VII alleges that the Village is liable as principal for violations of state law committed by its agents under a theory of respondeat superior; Count VIII seeks indemnification against the Village; Count IX alleges that the Village

1

and Mayor Henyard are liable for damages under a theory of Monell liability; and Count X alleges that Mayor Henyard used her authority as mayor to engage in unlawful policy and practices that violated plaintiff's First Amendment rights, pursuant to 42 U.S.C. § 1983. On November 6, 2023, defendants filed a partial motion to dismiss Counts III, IV, VI, IX, and X, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (Doc. 8). For the reasons discussed below, defendants' partial motion to dismiss is granted in part and denied in part.

## BACKGROUND

According to the factual allegations in plaintiff's complaint, plaintiff is an organizer and activist in the Chicagoland area. Plaintiff alleges that she organized and participated in a protest on August 2, 2021, to demand justice after Dolton police officers fatally shot Alexis Wilson ("Wilson") on July 27, 2021. This protest took place outside of Mayor Henyard's house, and afterwards plaintiff states that Henyard "repeatedly expressed to several people that she was upset at [plaintiff] for organizing the protest." One of Henyard's confidantes allegedly relayed Henyard's comments to plaintiff.

On August 12, 2021, plaintiff states that she attended the Village board meeting to express her frustration with the Village's response to Wilson's death, but Mayor Henyard allegedly locked the Village trustees out of the meeting, "thereby preventing the board from reaching the quorum necessary to proceed." Consequently, plaintiff complains that she and other activists could not make statements on the record. Plaintiff further alleges that when subsequent board meetings were conducted over Zoom, Mayor Henyard directed her staff to disable Zoom's chat feature and block community members from making public comments. Plaintiff asserts that Mayor Henyard "took this action to chill criticism of the [Dolton Police Department ("DPD")]

2

and her administration." Plaintiff also alleges that Mayor Henyard "eventually implement[ed] a policy requiring people to register to speak so that certain speakers[, including plaintiff,] could be excluded."

On September 1, 2021, plaintiff alleges that she and 25 other activists gathered near the Dolton Village Hall to protest the DPD's response to Wilson's death, at the same time as Mayor Henyard held an outdoor meeting for homeowners. According to plaintiff, the protestors gathered on the public sidewalks near the Village Hall, "intending to approach and participate in the Mayor's public meeting and to peacefully demand justice for Alexis Wilson." However, plaintiff alleges that nearly 125 police officers, including DPD officers, arrived at the protest with tactical gear, batons, and tear gas.

At or around 5:30 p.m., plaintiff states that the officers refused to allow the protestors to approach the Mayor's meeting, and ordered them to back away. After doing so, the protestors continued to protest, chanting and holding signs. Then, plaintiff states that the officers "became increasingly aggressive" and continued to order the protestors to move further away. According to plaintiff, Officer Lacey shouted into the crowd in a threatening tone, "Who is the organizer of this protest?" When no one answered his question, Officer Lacey allegedly "continued to shout threats, including 'Alright, y'all are going to get locked up.'" According to plaintiff, DPD officers blocked the protestors' path to Village Hall.

Approximately 45 minutes later, plaintiff alleges that protestors tried to approach Mayor Henyard's meeting by walking outside the blocked-off area, and plaintiff, with a bullhorn, continued to lead the crowd in chanting. However, as the protestors attempted to join the meeting, Lacey told them to "move back" as officers "walked in a coordinated line toward the protestors, threatening them with violence, arrest, and taunting them." At that point, plaintiff

3

alleges that Lacey pushed through the crowd toward her, and "told her to put her hands behind her back." According to plaintiff, when she asked Officer Lacey why she was being arrested, Lacey did not respond and continued to seize her, stating "don't resist."

After plaintiff was handcuffed, plaintiff alleges that she asked Lacey again why he was arresting her, and Lacey responded, "I'm shocked at you, you know better," "You going to court," and "You have some charges coming your way." Then, according to plaintiff, defendant Officer Jane Doe 1 stated that "she was ordered to make the arrest of [plaintiff]," and when plaintiff asked if the order came from Mayor Henyard, Officer Jane Doe 1 replied "yes." When plaintiff asked why, the officer allegedly stated, "I just do my job." Plaintiff claims that Mayor Henyard directed Officer Jane Doe 1 to arrest plaintiff while she exercised her First Amendment rights. According to plaintiff, Officers Lacey and Jane Doe 1 kept her in handcuffs for 45 minutes and then released her, dropping the charges against her.

Plaintiff also alleges that after her arrest, another protestor used the bullhorn to criticize the officers on the scene for their conduct toward protestors, and this protestor was also arrested, in addition to four other protestors. When DPD officers attempted more arrests, plaintiff alleges that the protestors disbanded and retreated.

On October 14, 2021, plaintiff states that she met with Mayor Henyard to discuss the protests and community demands for justice for Wilson. According to plaintiff, Mayor Henyard stated that "she was angry at [plaintiff] for organizing a protest outside her home." Plaintiff claims that Henyard's "feelings of animus toward [plaintiff] and other protestors" resulted in Henyard's "willful direction" to DPD officers to restrict plaintiff's ability to protest and participate in board meetings. Plaintiff further alleges that Mayor Henyard and Officers Lacey

4

and Jane Doe 1 "reached an understanding" to violate plaintiff's rights.[1]

Plaintiff states that the Village of Dolton has interrelated policies, practices, and customs, which include: falsely arresting protestors for engaging in protected speech and assembly; using excessive force and falsely arresting individuals without legal justification; failing to train officers on how to appropriately respond to protesters exercising their constitutionally protected rights; and retaliating against protesters who speak out against Henyard and the DPD. Further, she alleges that the Village lacks a policy addressing how officers should engage with individuals participating in constitutionally protected First Amendment activity. For example, also on September 1, 2021, plaintiff alleges that DPD officers "disrupted [Shabbir Manjee's] free speech activity," and roughly arrested him before holding him for several hours and issuing a false ticket for interfering with a public meeting.

## LEGAL STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Fed. R. Civ. Pro. 12(b)(6). For a claim to have "facial plausibility," a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

## DISCUSSION

---

[1] Later, on September 7, 2021, plaintiff alleges that Mayor Henyard introduced an ordinance that requires any person or organization to notify the police chief at least five days before an assembly, which the police chief "retains the right to forbid." Plaintiff states that the police chief's decision is final, and the ordinance gives DPD "complete discretion over whether to permit assembly."

Defendants move to dismiss Count III (civil conspiracy pursuant to 42 U.S.C. § 1983), Count IV (violation of the Illinois Constitution, Article I, §§ 1, 2, 4, 5, and 6), Count VI (civil conspiracy under Illinois state law), Count IX (Monell liability), and Count X (claim of unlawful policy and practice against Mayor Henyard pursuant to 42 U.S.C. § 1983), for failure to state a claim pursuant to Rule 12(b)(6). The court begins by granting defendants' motion to dismiss Count IV because plaintiff, in her response, "requests to proceed without these state law claims in the interest of judicial economy." Thus, the court is left to evaluate defendants' arguments to dismiss Counts III, VI, IX, and X.

Defendants first argue that plaintiff fails to state a claim in Counts III and VI because she has not plausibly pled the necessary elements of a civil conspiracy among Mayor Henyard and Officers Lacey and Jane Doe 1. Plaintiff makes similar arguments to support her claims pursuant to § 1983 and state law, so the court considers these claims together.

To plead a claim under § 1983 for civil conspiracy, plaintiff must plausibly allege that: (1) a state official and private individual(s) reached an understanding to deprive plaintiff of her constitutional rights; and (2) those individual(s) were "willful participant[s] in joint activity with the State or its agents." See Fries v. Helsper, 146 F.3d 452, 457 (7th Cir. 1998). Plaintiff must support her claims with specific allegations that suggest a "meeting of the minds." See Kunik v. Racine County, 946 F.2d 1574, 1580 (7th Cir.1991), abrogated on other grounds by Walker v. Thompson, 288 F.3d 1005 (7th Cir. 2002).

Illinois state law requires similar allegations to state a claim for civil conspiracy. To plead a civil conspiracy claim under Illinois state law, plaintiff must plausibly allege: (1) the existence of an agreement between two or more persons; (2) to participate in an unlawful act or a lawful act in an unlawful manner; (3) that an overt act was performed by one of the parties

6

pursuant to and in furtherance of a common scheme; and (4) an injury caused by the unlawful overt act. See Lewis v. Lead Indus. Ass'n, 2020 IL 124107, ¶ 20. It is the "tortious acts performed in furtherance of the agreement," not the agreement itself, that make up the "gist of a conspiracy claim." Id.

In the instant case, plaintiff alleges that Mayor Henyard and Officers Lacey and Jane Doe 1 had an "understanding" to deprive plaintiff of her rights to free speech and assembly by unlawfully arresting her. According to the complaint, defendants "took concrete steps" to enter into an agreement to violate plaintiff's rights, and "conspired by concerted action to accomplish [this] unlawful purpose by unlawful means." Plaintiff asserts that Mayor Henyard's alleged history of hostility toward protestors, and speech that is critical of the Village and the DPD, is circumstantial evidence of the conspiracy. Further, plaintiff emphasizes her allegation that Officer Jane Doe 1 confirmed to plaintiff that Mayor Henyard instructed her to arrest plaintiff, and did so while plaintiff was peacefully protesting.

The court agrees that plaintiff has plausibly pled claims for civil conspiracy under both federal and state law, which allow plaintiffs to survive motions to dismiss when they allege the general scope and objectives of an alleged conspiracy. See Hoffman-La Roche, Inc. v. Greenberg, 447 F.2d 872, 875 (7th Cir. 1971) (determining that it is sufficient under § 1983 to allege "a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences"). See also Adcock v. Brakegate, Ltd., 164 Ill. 2d 54, 64 (1994) (determining that it is sufficient under Illinois law to allege that defendants "underst[ood] the general objectives of the conspiratorial scheme, accept[ed] them, and agree[d], either explicitly or implicitly to do [their] part to further those objectives"). In the instant case, plaintiff has used circumstantial factual allegations to plausibly allege that defendants agreed to

7

curb plaintiff's speech by arresting her, with the general purpose of restricting speech by critics of the Village and the DPD. This is sufficient to state a claim for civil conspiracy, and thus, the court denies defendants' motion to dismiss Counts III and VI.

Next, the court evaluates whether plaintiff has plausibly stated a claim for Monell liability against Mayor Henyard and the Village in Count IX. The court begins by agreeing with defendants that individuals (like Mayor Henyard) cannot be held liable under § 1983 using a Monell theory of liability. Plaintiff can allege Monell liability against the Village based on Henyard's actions as a final policymaker, but even if Henyard were a final policymaker, she herself would not be liable under Monell, which contemplates municipal liability. See generally Monell v. Department of Social Services, 438 U.S. 658 (1976).

Conversely, the court agrees with plaintiff that she has plausibly stated a claim against the Village in Count IX. Under Monell, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Id. at 694. Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. Plaintiffs can allege the existence of a municipal policy or custom by alleging: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well-settled; or (3) an official with final policymaking authority. See Thomas v. Cook County Sheriff's Department, 604 F.3d 293, 303 (7th Cir. 2010).

In the instant case, plaintiff alleges that Mayor Henyard, "in her role as the mayor of the Village of Dolton, was the final policymaker for [DPD's] response to the protests," and "developed and maintained policies, practices, procedures, and customs of Dolton Police

8

officers." Plaintiff explains that Mayor Henyard instituted a policy of retaliating against her critics by chilling their speech and instructing DPD officers to arrest them with deliberate indifference to their rights.

However, whether an official is a final policymaker under § 1983 is a question of state or local law. See Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986); Kujawski v. Bd. Of Comm'rs of Bartholomew County, Ind., 183 F.3d 734, 737 (7th Cir. 1999). As defendants argue, "[t]he fact that a particular official—even a final policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." See id. at 481–482. A single decision imposed by a municipal policymaker may be sufficient to impose municipal liability. See id. at 480–81. However, the official must be a policymaker "in a particular area, or on a particular issue." See McMillian v. Monroe County, 520 U.S. 781, 785 (1997). The policymaker must make "a deliberate choice to follow a course of action . . . from among various alternatives." Pembaur, 475 U.S. at 483.

The court agrees with defendant that plaintiff has not plausibly alleged that Mayor Henyard has final policymaking authority on police procedures, including arrest procedures, police response to protestors, and police retaliation against critics. Even if the court assumes that Henyard ordered plaintiff's arrest in violation of her rights, one unlawful arrest does not necessarily suggest that Henyard has sufficient authority to implement a broader policy of arrest procedures. See Kujawski, 183 F.3d at 739 (reasoning that "the mere unreviewed discretion to make hiring and firing decisions does not amount to policymaking authority," but rather, "[t]here must be a delegation of authority to set policy for hiring and firing, not a delegation of only the final authority to hire and fire"). Plaintiff offers no specific factual allegations to support a plausible inference that Mayor Henyard has such final policymaking authority, although the

9

court notes that defendants' assertion that Mayor Henyard's authority is limited to presiding over council meetings, 65 ILCS 5/3.1-40-30, and vetoing items that she disagrees with, 65 ILCS 5/3.1-40-45, likely understates Henyard's authority over Village policy. See, e.g., Cozzi v. Vill. of Melrose Park, 592 F. Supp. 3d 701, 714–15 (N.D. Ill. 2022).

That being said, the court agrees with plaintiff that (at this stage) she has plausibly alleged that the Village has widespread, "de facto," or informal, practices or customs of falsely arresting protestors or other individuals without reasonable suspicion or probable cause, failing to train officers on constitutional arrest procedures for protestors,[2] and retaliating against protestors. Plaintiff lists other alleged instances of DPD officers arresting citizens without reasonable suspicion or probable cause, as well as one other example of DPD officers arresting a protestor, Shabbir Manjee, on the same day as plaintiff. On the other hand, plaintiff has not stated a claim that the Village had a practice or custom of using excessive force, which plaintiff does not suggest was used against her during her arrest. Thus, the court dismisses Count IX in part (against Henyard) and denies defendant's motion to dismiss Count IX against the Village.

Last, the court evaluates defendants' argument that plaintiff has failed to state a claim in Count X for unlawful policy and practice against Mayor Henyard, pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Mayor Henyard "used her authority as Mayor of Dolton to instruct the Dolton Police to target Plaintiff with enforcement action and took further actions to chill Plaintiff's speech." As discussed above, plaintiff has not plausibly alleged that Henyard has policymaking authority over DPD enforcement actions and arrest procedures. Yet, the court evaluates plaintiff's claim that Henyard is liable for her alleged conduct in chilling plaintiff's

---

[2] To state a claim against a municipality for failure to train under § 1983, a plaintiff must allege that the failure to train amounts to deliberate indifference to the rights of its citizens with whom the police come into contact. See City of Canton v. Harris, 489 U.S. 378, 392 (1989).

speech and assembly.

To establish a claim for individual liability (not Monell liability) under § 1983, plaintiff must allege that the individual defendant, through her own conduct, violated the U.S. Constitution. See Perez v. Fenoglio, 792 F.3d 768, 781 (7th Cir. 2015). This requires "some causal connection or affirmative link between the action complained about and the official sued." See Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). At this stage, the court assumes as true that Mayor Henyard engaged in other conduct to restrict critics' speech, including disabling Zoom's chat feature and restricting public comment during Village board meetings. With these allegations, plaintiff has plausibly alleged that Henyard violated the First Amendment through her own conduct, which plaintiff alleges has chilled her willingness to participate in, and organize, protests in the future. Thus, the court denies defendants' motion to dismiss Count X.

## **CONCLUSION**

For the reasons stated above, the court grants in part and denies in part defendant's motion (Doc. 8). Count IV is dismissed, and Count IX is dismissed against Henyard. The court denies defendants' motion to dismiss Counts III, VI, and X, and Count IX against the Village. Plaintiff is directed to file an amended complaint consistent with this opinion (e.g., eliminating the state law claims, dismissed counts, and defendant Henyard in Count IX) on or before February 29, 2024. Defendants are directed to answer or otherwise respond to the amended complaint on or before March 28, 2024. The parties are directed to file a joint status report using this court's form on or before April 11, 2024.

**ENTER:**

_____
Robert W. Gettleman
**United States District Judge**

**DATE: February 14, 2024**